**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br>**SIMON ANTHONY PETERS**<br><br>**Defendant.** | **Case No. 3:24-CR-00005** |

## UNITED STATES' SENTENCING MEMORANDUM

COMES NOW the Acting United States Attorney for the District of the Virgin Islands, Adam F. Sleeper, and Assistant United States Attorney Natasha L. Baker and submits the following Sentencing Memorandum in support of a recommended sentence at the low end of the guideline range.

## I. BACKGROUND

On or about January 27, 2024, a United States Postal Service (USPS) employee received a telephone call at the Ottley Post Office located on St. Thomas, VI. An unidentified male caller was angry that one of his boxes going to the Kirwan Terrace Housing Community had gone missing. The call was recorded. The subject made the following threatening statements:

a. "Make sure the fat boy know, we're watching him and next time we're going to kill him behind the building."

b. "We've got three or four men on the case already."

c. "So I'm going to make sure I send packages this week, and if any of them go missing… you will see the results."

d. "We are definitely going to make a frigging example out here."

e. "Any more packages from California go missing, you will see what happen to the co-workers dem… one by one."

f. "Your postal inspector working all of dem, you let everyone in the post office know they got a set of man in the Virgin Islands getting ready to start killing all you all… for every box that go missing"

Defendant had previously called USPS on or about January 20, 2024, and inquired about a tracking number. The tracking number came back to a USPS parcel that had been mailed from Escondido, CA on January 16, 2024, to an apartment at the Kirwan Terrace Housing Community on St. Thomas, VI. Agents from Homeland Security Investigations confirmed that the Parcel had been seized by United States Customs and Border Protection officers on January 20, 2024. The parcel had been found to contain marijuana.

On or about January 29, 2024, while working at the Ottley Post Office, the postal inspector received notification that Defendant was on the phone. The postal inspector proceeded to speak with Defendant and recorded the conversation. Defendant stated he wanted to speak to the delivery "driver" for Kirwan Terrace. When asked why he wanted to speak with the driver, Defendant stated, "To let the people know what's going on in the Virgin Islands. We got people driving around looking for him, and you gon hear him get gun shots in his fucking ass." The Defendant also stated "I've been doing this for over 10 years now. I'm in California dealing with the Virgin Islands."

As a result of the threats, USPS management decided not to send any letter carriers to the Kirwan Terrace Housing Community for two days to ensure their safety. Law enforcement officers from on and off island surrounded the Kirwan Terrance Community and the post offices to ensure safety. Mail delivery to the Kirwan Terrace community was interrupted.

Follow-up investigation tracked the caller to an address in California. On February 12, 2024, law enforcement officers proceeded to the address and found Defendant residing in his vehicle outside of a residence. Law enforcement rang the number that called the Post Office when the threats were made. The Defendant's cellular phone rang. Defendant was arrested and charged with two counts of engaging in interstate communications with treats to injure and two counts of influencing a federal officer by threats. On February 18, 2025. the morning of jury selection, Defendant pled guilty to Count Two of the Indictment – Influencing a Federal Officer by Threat in violation of title 18, United States Code, section 115(a)(1)(B).

**A. The Presentence Report (PSR)**

With respect to Count Two (Influencing a Federal Officer by Threat), the PSR establishes a base offense level of 12 pursuant to U.S.S.G.§ 2A6.1(a)(1). (PSR ¶ 30). Defendant received a four-level upward adjustment for the specific offense characteristic for substantial disruption of service and cost of responding to the offense pursuant to U.S.S.G.§ 2A6.1(b)(4). (PSR ¶ 31). Defendant also earned a six-level upward adjustment for the victim being a government officer or employee, pursuant to U.S.S.G. §3A1.2(b). (PSR ¶ 32).

The PSR calculated Defendant's adjusted offense level of 22. (PSR ¶ 35). Defendant's guilty plea qualified him for a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E.1(a) and (b). (PSR ¶ 37). The government agrees with the PSR's guideline calculations and further agrees that Defendant's final adjusted offense level is 20, (PSR ¶ 38), which results in a recommended range of imprisonment of 37-46 months, based on his criminal history category of II. (PSR ¶ 89).

However, during plea negotiations the Government's sentencing calculations did not properly factor the six-level upward adjustment for the victim being a government officer of

employee, pursuant to U.S.S.G. §3A1.2(b), thus leading to a sentencing calculations range of 18-24 months rather than 37-46 months. Considering the Government's agreement to recommend within the range as calculated in the Plea Agreement and Defendant's reliance on this representation in accepting the plea, the Government will not deviate from Plea Agreement range during sentencing.

## I. LEGAL STANDARD

This Court follows a three-step process when sentencing a defendant: (1) calculate the defendant's guideline sentence, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step, the Court must consider the advisory guideline range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the §3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). The Government explains below its view of the proper consideration in this case of the advisory guideline range and of the § 3553(a) factors, which supports a sentence at the low end of the guideline range.

Consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the United States' recommended sentence is appropriate in this case.

The 18 U.S.C. § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) the need to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a). Additionally, the Court must consider the kinds of sentences available, the range set forth by the Guidelines, any pertinent policy statements by the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense. *Id.*

A. <u>The Nature and Circumstances of the Offense</u>

The Defendant called the postal service and threated to kill postal employees. The circumstance of this deranged crime is further aggravated by the fact that the defendant made the threats to facilitate his illegal acts of mailing controlled substances through the post office. By the defendant's own admission, he has been dealing drugs with the Virgin Islands from California for over 10 years.

Defendant's actions fall within what has become a common trend of crimes against the postal service that has significantly impacted the service, and the sense of safety and security felt by postal workers across the nation. These crimes have become so frequent and serious that in 2023, the postal service initiated a campaign called Project Safe Delivery. See attached [Exhibit 1]. The goal of the campaign is to "combat the recent rise in threats and attacks on letter carriers and mail theft incidents by protecting Postal employees and the security of the nation's mail and

packages." Id.

Due to limited access to and the high-cost goods, the Virgin Islands community relies heavily on the postal system to receive products for households and businesses alike. Defendant's unremorseful decision to threatened to kill an innocent, hardworking, federal postal worker as well as other employees of the postal system, led to both temporary and permanent effects on this community. Not only did the Defendant compromise an already strained mailing system, but Defendant also cost the federal government thousands of dollars to bring additional law enforcement into the territory. Law enforcement surrounded the M. J. Kirwan Terrace Housing Community for days and the post offices for weeks. No mail was delivered to the housing community during this time. The mail carrier for the area was afraid for his life and the residents of the community were concerned for their safety.

B. History and Characteristics of the Defendant

Defendant is 42-year-old who has spent most of his life using, possessing and selling controlled substances. At the age of 18, Defendant was convicted in the Superior Court of the Virgin Islands for carrying a firearm. The facts of the underlying case also evidence that the defendant was in possession of marijuana. At the age of 21, the Defendant was convicted in Maryland for possessing marijuana. At the age of 23, the defendant was convicted of possession of heroin with the intent to distribute. Defendant violated probation in this case. At age 26, the defendant was convicted of possession of marijuana for sale. When arrested the defendant was in possession of marijuana, marijuana plants, hydrocodone pills, and cyclobenzaprine pills. In this case the defendant had a warrant issued for failure to appear and to revocations of probation. At age 30, the defendant was convicted of child molestation. During that arrest he was also in possession of drug. At age 32 defendant was convicted of failing to register as a sexual offender.

Throughout this time, defendant had fourteen other arrests. Many of these arrests occurred while the defendant was already serving time on probation.

C. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment for the Offense

The Defendant's history proves that he has little regard for the effects of his criminal conduct on the community. The facts of this case further evidence that reality. While the defendant accepted responsibility prior to trial in this matter, the defendant has at no time shown any sense of remorse or appreciation for the gravity of his actions. The recordings evidence that despite repeatedly being told that he cannot mail marijuana through the mail, the defendant still acted justified in his actions. Further, the defendant has made it his career to unapologetically infiltrate this community with illicit substances. Despite a decent upbringing, a family unit, and being in good physical shape, the defendant chooses to live the life of a vagrant, commit crime, and deal drugs.

Our community has also seen a rise in cases involving attacks on postal employees. It is important that the court sends a clear message that this will not be tolerated. Not only because our community cannot afford it but also because it is important to protect our postal workers.

D. Affording Adequate Deterrence to Criminal Conduct and Protecting the Public from Further Crimes of the Defendant

Based on the Defendant's criminal history, it is doubtful that punishment will deter the defendant in this case. Throughout his lifetime, the defendant has served at least 21 months incarcerated and over 11 years on supervised release or probation. The public should be protected from this conduct especially under circumstances such as the underlying where Defendant's history indicates he is likely to reoffend.

E. Providing the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

The facts of this case, the information contained in the presentence report and this sentencing memorandum highlights that the defendant may benefit from educational, vocation, mental health and substance abuse services while incarcerated.

## II. CONCLUSION

The government submits that consideration of the factors under 18 U.S.C. § 3553(a) supports a sentence on the low end of the guideline range, based on the nature of this crime, the defendant's history and characteristics, the need to reflect the seriousness of the crime and promote respect for the law, the need for deterrence, the need to protect the public from future crimes of the defendant, and the need to avoid disparity in sentencing. This sentence is sufficient but not greater than necessary to comply with the goals of 18 U.S.C. § 3553(a).

Date: May 16, 2025

ADAM F. SLEEPER
ACTING UNITED STATES ATTORNEY

By: /s/ Natasha L. Baker
NATASHA L. BAKER
ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
5500 Veteran's Drive, Suite 260
St. Thomas, VI 00802-6214
TEL: (340) 774-5757
FAX: (340) 776-3474
EMAIL: Natasha.baker@usdoj.gov